UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN COMBS ) | Case Number |
| Plaintiff ) | |
| ) | CIVIL COMPLAINT |
| vs. ) | |
| NCO FINANCIAL SYSTEMS, INC., ) | JURY TRIAL DEMANDED |
| CAPITAL ONE SERVICES, LLC ) | |
| AND ) | |
| CAPITAL ONE, N.A. ) | |
| Defendant ) | |

**COMPLAINT AND JURY DEMAND**

**COMES NOW,** Plaintiff, Helen Combs, by and through her undersigned counsel, Bruce K. Warren, Esquire and Brent F. Vullings, Esquire complaining of Defendant and respectfully avers as follows:

**I.  INTRODUCTORY STATEMENT**

1. Plaintiff, Helen Combs (hereinafter "Plaintiff"), is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, as well as Civil Conspiracy and Emotional Distress Intentionally Inflicted.

## II.    JURISDICTION

2. Jurisdiction of this court arises under 15. U.S.C. § 1692k(d) and 28 U.S.C. §1337.

3. Venue in this District is proper in that the Defendants maintain a principal place of business located in this District.

## III.    PARTIES

4. Plaintiff, Helen Combs, is an adult natural person residing at 312 East King Street, Garrett, IN 46738.  At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5. Defendant, NCO Financial Systems, Inc. at all times relevant hereto, is and was a corporation engaged in the business of collecting debt within the Commonwealth of Pennsylvania and has a principal place of business located at 507 Prudential Road, Horsham, PA 19044.

6. Defendant, Capital One Services, LLC at all times relevant hereto, is and was a limited liability company engaged in the business of providing financial services nationwide, including, but not limited to the State of Indiana and the Commonwealth of Pennsylvania and has a registered address located at 2595 Interstate Drive, Suite 103 Harrisburg, PA 17110 with a principal place of business located at 1680 Capital One Dr Mc Lean, VA 22102.

7. Defendant, Capital One, N.A. at all times relevant hereto, is and was a national banking association engaged in the business of commercial banking nationwide,

including, but limited to the State of Indiana and the Commonwealth of Pennsylvania and has a principal place of business located at 1680 Capital One Dr, Mc Lean, VA 22102-3407.

8. Defendant is engaged in the collection of debts from consumers using the telephone and mail. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## IV. FACTUAL ALLEGATIONS

9. In or around September, 2010, the Plaintiff began receiving phone calls from the Defendant, NCO regarding an alleged debt owed by the Plaintiff's husband to Capital One in the approximate amount of $500.00.

10. The Defendant, NCO's phone calls become a nuisance about a week before the Plaintiff's husband passed away.

11. The Defendant, NCO contacted the Plaintiff at least five to six times a day.

12. The Plaintiff informed the Defendant, NCO's agents that the Plaintiff's husband was very ill and to stop calling but the agents would not listen and continue to talk over the Plaintiff.

13. During the excessive phone calls, the Plaintiff made several attempts to explain the condition of her husband's health to no avail.

14. On or around September 27, 2010, the Plaintiff received a phone call from the Defendant, NCO and informed the agent that the Plaintiff's husband was dying and to not call again.

15. The Defendant, NCO continued to contact the Plaintiff against the Plaintiff's request, leaving messages on the Plaintiff's answering machine stating the Plaintiff's husband's name and for him to return the call.

16. On September 28, 2010 at 2:15 am, the Plaintiff's husband passed away and to her dismay, at 8:00 am that morning, began receiving phone calls from the Defendant, NCO.

17. The Plaintiff informed the Defendant, NCO that the Plaintiff's husband had just passed away and to not call again but the Defendant, NCO's agent continued to talk over the Plaintiff as if the agent had not just heard what the Plaintiff said. The Plaintiff then yelled at the Defendant, NCO's agent outraged that agent continued to harass the Plaintiff after being told that the Plaintiff's husband passed away earlier that morning.

18. The Defendant, NCO relentlessly continued to contact the Plaintiff six to seven times a day asking for the Plaintiff's deceased husband after the Plaintiff explicitly told the Defendant, NCO to stop calling.

19. On October 2, 2010, the Defendant, NCO contacted the Plaintiff just as the Plaintiff was about to leave home to go to the funeral. The Plaintiff informed the Defendant, NCO of this and yet the Defendant, NCO did not listen and rudely continued to talk over the Plaintiff. The Plaintiff told the Defendant, NCO to never call the Plaintiff's home again.

20. After the funeral, upon returning home, the Plaintiff received five more phone calls from the Defendant, NCO.

21. The Plaintiff's son answered one of the Defendant, NCO's phone calls and told the agent that he would be sending the Defendants death certificates as proof and to stop calling the Plaintiff.

22. On October 3, 2010, the day after the Plaintiff's husband's funeral, the Plaintiff continued to receive phone calls from the Defendant, NCO in which the Plaintiff gave the Defendant, NCO directions to the cemetery where the Plaintiff buried her husband, so that the Defendant, NCO could see for themselves and update their systems accordingly as they should have from the start.

23. The Plaintiff still received yet another call from the Defendant, NCO that same day in which the Plaintiff's son answered again telling the Defendant, NCO that he will personally go to the cemetery and take a picture of the grave and send it to the Defendants.

24. On or around October 4, 2010, the Plaintiff's son sent copies of the Plaintiff's husband's death certificates to the Defendants.

25. On or around October 4, 2010, the Plaintiff received a letter in the mail from the Defendants that was addressed the Plaintiff's deceased husband, Tyron L. Combs, thanking Mr. Combs for contacting the Defendant, Capital One. The Defendants have never spoken to the Plaintiff's husband, only herself and her son. **See Exhibit "A" attached hereto.**

26. Outraged by the letter from the Defendants, the Plaintiff contacted the number provided in the letter only to find out that the number ultimately lead her to the

Defendant, NCO even though the letter and the automated message stated that it was Defendant, Capital One.

27. On October 4, 2010, the Plaintiff wrote an email to the Defendant, Capital One. **See Exhibit "B" attached hereto.**

28. In the aforementioned email, the Plaintiff again explained the situation and described the heartache caused by both the Defendants' actions and the loss of the Plaintiff's husband.

29. On or around October 5, 2010, the Defendant, NCO continued to contact the Plaintiff which the Plaintiff no longer answered when seeing the Defendant, NCO's name appear on caller id.

30. On October 8, 2010, the Plaintiff received an email response from the Defendant, Capital One addressed to the Estates of Tyron Combs. The email stated that Plaintiff send the Defendant, Capital One information regarding the death of the Plaintiff's husband. **See Exhibit "C" attached hereto.**

31. On the same day stated above, the Plaintiff responded to the Defendant, Capital One's email stating that the Plaintiff's son had already sent the Plaintiff's husband's death certificates to both Defendants. **See Exhibit "C" attached hereto.**

32. On October 11, 2010, the Plaintiff received another email from the Defendant, Capital One's representative "Mary Davis." "Mary Davis" stated that the previous emails were sent to her attention and informed the Plaintiff that the account would be sent to the Defendant, Capital One's Estate Department and that the Plaintiff would no longer be subjected to collection calls. The email then stated that the Plaintiff's

phone number would be removed from the system and all collection attempts regarding the Plaintiff's husband's account would cease.  **See Exhibit "D" attached hereto.**

33. On or around October 11, 2010, the Plaintiff contacted "Mary Davis" who was very kind and admittedly appalled by the behavior of the Defendant, NCO.  "Mary Davis" also informed the Plaintiff that a full investigation would be conducted.

34. On October 12, 2010, exactly two weeks after the Plaintiff's husband passed away, the Plaintiff received an email from the Defendants, addressed to the Plaintiff's husband, offering a payment plan.  **See Exhibit "E" attached hereto.**

35. The Defendant knew or should have known that their actions violated the FDCPA.  Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

36. At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

37. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

## COUNT I – FDCPA

38. The above paragraphs are hereby incorporated herein by reference.

39. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by the Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

40. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of 15 U.S.C. § 1692:

§ 1692c(a)(1):   At any unusual time, unusual place, or unusual time or place known to be inconvenient to the consumer

§ 1692d:   Any conduct that natural consequence of which is to harass, oppress or abuse any person

§ 1692d(5):   Caused the phone to ring or engaged any person in telephone conversations repeatedly

§ 1692e:   Any other false, deceptive or misleading representation or means in connection with the debt collection

§ 1692e(14):   Any name other than the true name of the debt collector's business

§ 1692f:   Any unfair or unconscionable means to collect or attempt to collect the alleged debt

§ 1692g:   Failure to send the consumer a 30-day validation notice within five days of the initial contact

**WHEREFORE**, Plaintiff respectfully requests that this court enter judgment in her favor and against NCO Financial Systems, Inc., Capital One Services, LLC and Capital One, N.A. for the following:

a. Actual damages;

d. Statutory damages pursuant to 15 U.S.C. §1692k;

  c. Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1692k; and

  d. Such addition and further relief as may be appropriate or that the interests of justice require.

## COUNT II

### CIVIL CONSPIRACY

  41. Plaintiff realleges and incorporates herein by reference all of the allegations contained in Paragraphs 9 through 37, inclusive, of this complaint as though fully set forth herein.

  42. Plaintiff is informed and believes and therein allege that Defendants, and each of them, entered into an agreement under which said Defendants, acting in concert, agreed to willfully or knowingly violate the FDCPA.

  43. The acts of the Defendants, and each of them, were in furtherance of a conspiracy to violate a legal duty for their own financial gain.

  44. Defendants had an independent duty to Plaintiff and all others similarly situated not to engage in said conduct and their conduct involves a conspiracy to violate a legal duty in furtherance of Defendants financial gain.

  45. Defendants at all times did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

  46. As a proximate result of the wrongful acts of the Defendants, and each of them, Plaintiff had been damaged in a sum according to proof and for attorney's fees, costs and interest according to proof.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

    a.    Actual damages;

    b.    Treble damages;

    c.    An award of reasonable attorneys fees and expenses and costs of court; and

    d.    Such additional relief as is deemed just and proper, or that the interests of justice require.

## COUNT III
### EMOTIONAL DISTRESS INTENTIONALLY INFLICTED

47.    Plaintiff restates each and every allegation numbered above.

48.    The actions of the Defendants described were extreme and outrageous.

49.    The actions of the Defendants were intentional to embarrass, degrade, scare, humiliate and coerce Plaintiff to make payment.

50.    The proximate cause of Plaintiff's emotional distress was the actions of the Defendants.

**WHEREFORE**, Plaintiff seeks judgment against the Defendants for an amount including the reimbursement of costs, reimbursement of interest, plus costs of suit and attorney fees. Plus punitive damages up to $350,000.00 or five (5) times the compensatory damages; whichever is greater.

## V. JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.

                                         **Respectfully submitted,**

                                         **WARREN & VULLINGS, LLP**

**Date: October 21, 2010**　　　　　**BY:** */s/ Bruce K. Warren BKW4066*
　　　　　　　　　　　　　　　　Bruce K. Warren, Esquire

　　　　　　　　　　　　　　　　**BY:** */s/ Brent F. Vullings BFV8435*
　　　　　　　　　　　　　　　　Brent F. Vullings, Esquire

　　　　　　　　　　　　　　　　Warren & Vullings, LLP
　　　　　　　　　　　　　　　　1603 Rhawn Street
　　　　　　　　　　　　　　　　Philadelphia, PA  19111
　　　　　　　　　　　　　　　　215-745-9800   Fax 215-745-7880
　　　　　　　　　　　　　　　　Attorney for Plaintiff